**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROL BELL, et al.,** | ) | **Case No.  1:07 CV 1476** |
| | ) | |
| Plaintiffs, | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **CITY OF CLEVELAND,** | ) | **AND ORDER OF DISMISSAL** |
| | ) | |
| Defendant. | ) | |

Before the Court is the Motion to Dismiss Plaintiff's [sic] Complaint filed by Defendant City of Cleveland on May 22, 2007 (the "Motion") **(ECF No. 3)**.  Plaintiff Carol Bell subsequently filed a timely Memorandum in Opposition to the Motion (ECF No. 15).  Counsel for Defendant City of Cleveland ("City") advised the Court that it was standing on its Motion and would not file a reply brief.  For the reasons given below, the Motion is **GRANTED**.

Also before the Court is the Motion to Intervene As Additional Party Plaintiff (the "Motion to Intervene") filed on July 17, 2007 by the Cleveland Branch National Association for the Advancement of Colored People ("NAACP") **(ECF No. 8)**.  The City filed a brief in opposition to NAACP's motion on August 13, 2007 (ECF No. 16).  For the reasons given below, NAACP's Motion to Intervene is **DENIED**.

## I. BACKGROUND

At some point before March 11, 2002, the United States Department of Justice ("DOJ") instituted an investigation to determine whether the Cleveland Department of Police ("CDP") was engaged in a pattern or practice of unconstitutional conduct by virtue of the CDP's policies, practices, and procedures.[1] (ECF No. 1-3, Compl. Ex. A, 1.) In a letter addressed to the Cleveland Law Director and dated July 23, 2002 (the "Letter"), DOJ offered several recommended reforms to CDP, including, *inter alia*, reforms to CDP's use of deadly force policies, procedures, and practices. (*Id.* at 2-4.) The investigation, at least of matters related to use of deadly force, continued until approximately February 9, 2004, the date on a document entitled Agreement to Conclude DOJ's Investigation of the Cleveland Division of Police's Use of Deadly Force (the "Agreement"). (ECF No. 1-3, Compl, Ex. B, 1.)

The Agreement was signed by the Chief of DOJ's Special Litigation Section, Cleveland's Director of Public Safety, the Cleveland Chief of Police, and the City's Law Director. (*Id.* at 4.) Under the terms of the Agreement, the City and the CDP agreed to continue recent reforms enacted pursuant to the Letter's recommendations. (*Id.* at 1.) The Agreement also required the City and CDP to implement numerous other recommended reforms specifically related to the use of deadly force by CDP officers and the investigations conducted by the CDP's Use of Deadly Force Investigation Team ("UDFIT"). (*Id.* at 2-4.) The Agreement was to terminate one year after it went into effect, provided that DOJ had not filed suit to enforce any of its provisions before that time. (*Id.* at 3, ¶ 8.) The Agreement also contained an enforcement

---

[1] It is unclear from the documents before the Court when, exactly, DOJ began its investigation. March 11, 2002 is the earliest date referencing the investigation cited in the July 23, 2002 letter.

-2-

mechanism in the event that CDP failed to fulfill any of its obligations under the document. (*Id.* at 3, ¶ 11.) The enforcement mechanism is explained in more detail below.

Plaintiff Carol Bell is the mother of Henry Bell, whose death on October 21, 2006 involved the use of deadly force by a Cleveland Division of Police officer. (ECF No. 1-3, Compl., ¶¶ 11, 14.) Plaintiffs John and Jane Doe are citizens and residents of the City of Cleveland. (*Id.* at ¶ 3.) Plaintiffs filed this action in the Court of Common Please for Cuyahoga County, Ohio, seeking a declaration of rights under the Agreement and the Letter, pursuant to Ohio's Declaratory Judgements Act, Ohio Revised Code § 2721 *et seq.* (*Id.* at ¶¶ 1-2.) Plaintiffs also seek appropriate injunctive relief, essentially to force CDP's compliance with the terms of the Agreement and the recommended reforms in the Letter. (*Id.*)

The City removed the case to federal district court, citing federal question jurisdiction, and Plaintiffs filed a Motion to Remand which the City opposed. In an Order dated June 22, 2007, the Court denied the Motion to Remand, citing original federal question jurisdiction pursuant to 28 U.S.C. § 1331 (albiet on different grounds than the City argued). (ECF No. 7.)

The day after the City removed the case to federal court, it filed the instant Motion. Approximately two months later (and after the Court's order denying the Motion to Remand), the Cleveland Branch of the National Association of Colored Persons ("NAACP") filed a Motion to Intervene (ECF No. 8). Two days later, on July 19, 2007, the Court issued an order setting an August 13, 2007 deadline for Plaintiffs' response to the instant Motion. (ECF No. 10.) In the same order, the Court directed the NAACP to file a supplemental brief on why it has standing in this case, with said brief to be filed no later than July 30, 2007 and the City's

response brief to be filed no later than August 13, 2007. (*Id.*) The Court also explained that NAACP could file its own opposition brief to the instant Motion, which the Court would consider even if the NAACP was not yet a party at that time. (*Id.*)

NAACP timely filed its brief on standing, and then filed a document entitled "Motion and Memorandum to Align Deadlines for Plaintiffs and NAACP Opposing Motion to Dismiss" ("Motion to Align"). (ECF No. 12.) The City filed a memorandum in opposition. (ECF No. 13.) In an order dated August 8, 2007, the Court denied the Motion to Align, reiterated that August 13, 2007 remained the deadline for Plaintiffs' opposition brief to the instant Motion, and reminded the NAACP that it could also file its own opposition brief. (ECF No. 14.) Plaintiffs timely filed their opposition brief on August 13, 2007 (ECF No. 15), and the City timely filed its brief in opposition to the NAACP's Motion to Intervene on the same day (ECF No. 16). NAACP did not file a separate brief in opposition to the Motion.

## II. JURISDICTION

A claim "arises under federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal laws or the federal Constitution." *Davis v. United States*, No. 06-4514, --- F.3d ----, Slip Opinion at 3 (6th Cir. August 16, 2007) (*citing Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548 (6th Cir. 2006) (brackets and quotation marks omitted)). "Suits to enforce contracts with federal agencies are governed by federal common law." *Western Sec. Co. v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir. 1991) (*citing Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943); *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947); *Price v. Pierce*, 823 F.2d 1114, 1119-20 (7th Cir. 1987); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2d Cir. 1985); *Lawrence v. United States*, 378

F.2d 452, 461 (5th Cir. 1967); *McDonald v. United States*, 13 Cl. Ct. 255, 260 (1987)). Federal courts use federal common law to evaluate government contracts, *Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005), and thus federal common law would control interpretation of the contractual rights and duties of the parties to the contract. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 31 (1977) ("[N]othing we say here forecloses the applicability of federal common law in interpreting the rights and duties of the United States under federal contracts."). As a result, suits to enforce federal government contracts arise under federal law for purposes of 28 U.S.C. § 1331 federal question jurisdiction. *Derwinski*, 937 F.2d at 1280 (*citing Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir. 1990)).

In the instant case, determining whether the City breached the Agreement requires interpretation and evaluation of the rights and duties of the City and DOJ as parties to a federal contract. Accordingly, the Court has § 1331 federal question jurisdiction over the case. Furthermore, the explicit language of the Agreement provides that enforcement of the contract was to be via a suit brought in the United States District Court for Northern District of Ohio. This fact bolsters the Court's conclusion that federal question jurisdiction applies to the instant action.

### III. LAW AND ANALYSIS

The City's Motion argues that Plaintiffs must be dismissed for two principle reasons: first, that Plaintiffs do not have standing to enforce the Agreement; and second, that Plaintiffs's Complaint actually seeks mandamus relief to which Plaintiffs are not entitled. (See generally ECF No. 3, Motion.) Because the Court finds that Plaintiffs are without standing to

enforce the Agreement, it does not reach the secondary questions of what relief Plaintiffs actually seek and whether they are so entitled. For purposes of this analysis, the Court assumes *arguendo* that the Agreement is enforceable more than two years after the Agreement, by its express terms, has expired. Had Plaintiffs been able to sufficiently demonstrate intended third-party beneficiary status, they still would have faced the substantial hurdle of trying to enforce an expired contract.

### A. The Court Must Apply Ohio Contract Law to Resolve the Standing Question

Federal common law governs analysis of the contracting parties' respective rights and duties under the Agreement. Whether Plaintiffs have standing as third-party beneficiaries to enforce the Agreement, however, is a threshold determination to which the Court must apply Ohio state contract law. *See Miree*, 433 U.S. at 31 ("The question of whether [private third party] petitioners may sue respondent does not require decision under federal common law since the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome.") (emphasis added). In *Miree*, the plaintiffs – survivors of deceased passengers and others similarly affected – sued after a Lear Jet crashed shortly after taking off from a county airport. *Id.* at 26. Birds circling a garbage dump near the runway allegedly caused the crash, when they were sucked into the jet's engines. *Id.* at 27. The plaintiffs sought damages from the county under several theories, including breach of contract. *Id.* at 26-27. In six grant agreements between the Federal Aviation Administration ("FAA") and the county, the county promised to restrict the use of land near the airport to "activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft." *Id.* at 27. According to the plaintiffs' argument, the county, by using the land near the runway as a garbage dump, had

breached the federal agreements (or contracts). *Id.* The defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* The Supreme Court instructed the lower courts on remand to apply Georgia state law in determining whether the plaintiffs had standing as third-party beneficiaries to recover on their breach of contract claim. *Id.* at 32-33.

Federal courts following *Miree* have likewise applied the pertinent state contract law to determine whether parties who were not parties to a contract made between the federal government and other entities (whether private businesses or local governmental entities) had standing to enforce the contracts as third-party beneficiaries. *See, e.g.*, *Santa Monica Airport Assoc. v. Santa Monica*, 481 F. Supp. 927, 946 (C.D. Cal. 1979) (applying California contract law to hold that aviation enthusiasts who used Santa Monica Municipal airport did not have third-party standing to enforce agreements between the FAA and the City of Santa Monica, California); *United States ex. rel. Western Area Power Admin. v. Pacific Gas & Electric Co.*, 714 F. Supp. 1039, 1051 (N.D. Cal. 1989) (applying California contract law to find that an agreement between the DOJ's Antitrust division and the Pacific Gas & Electric power company was made expressly for the benefit of the plaintiffs, and therefore plaintiffs had third-party beneficiary standing to enforce the contracts); *Florida Mun. Power Agency v. Florida Power and Light Co.*, 81 F. Supp. 2d 1313, 1326 (M.D. Fl. 1999) (applying Florida state contract law – after citing *Western Area Power* – to find that an agreement between DOJ and Florida Power and Light "intended to confer a direct and substantial benefit upon" the plaintiff (another Florida utility), and therefore the plaintiff utility had standing to enforce its rights under the contract as a third-party beneficiary).

### B.  Third Party Beneficiaries Under Ohio Contract Law

As the preceding discussion illustrates, the Court must apply Ohio contract law to the instant case.  Specifically critical to the instant case, "as a general rule private citizens have no right to enforce government contracts on their own behalf unless a different intention is clearly manifested." *Ohio ex rel. Dellagnese v. Bath-Akron-Fairlawn Joint Economic Develop. Dist.*, 2006 Ohio 6904, *P19, 2006 Ohio App. LEXIS 6826, **14 (Ohio Ct. App., Dec. 27, 2006) (*quoting Akron v. Castle Aviation, Inc.*, 1993 Ohio App. LEXIS 2993, *5 (Ohio Ct. App. 1993)) (emphasis added), *appeal denied*, 2007 Ohio 2208, 2007 Ohio LEXIS 1259 (Ohio, May 16, 2007).  Under Ohio law, a non-party may not assert contract rights unless it is a third-party beneficiary under the contract or such standing is conferred by statute.  *Castle Aviation*, 1993 Ohio App. LEXIS 2993 at *4.  Here, it is undisputed that DOJ and the City are the only parties to the contract.  Similarly, Plaintiffs do not (and cannot) contend that standing is conferred by statute; the Agreement was not made pursuant to any statute.  Plaintiffs argue only that they have standing as third-party beneficiaries.

Only a party to a contract or an intended third-party beneficiary – and not an indirect or incidental beneficiary – may bring an action to enforce a contract under Ohio law. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E.2d 780, 36 Ohio St. 3d 36, 40-41 (1988).  A third party who simply receives a benefit from an agreement, without more, is not an intended third-party beneficiary of that contract.  *Dellagnese*, 2006 Ohio 6904 at *P18.  A mere incidental or indirect benefit of a contract flowing to a non-party is not sufficient to give such party a cause of action in breach.  *Id.* (*quoting Castle Aviation*, 1993 Ohio App. LEXIS 2993 at *5).  The third party need not be named in the contract, but a third party must show that the contract was made

-8-

and entered into with the intent to benefit the third party in order to recover on a breach of contract claim. *Kappes v. Village of Moscow*, 1998 Ohio App. LEXIS 2012, *5 (Ohio Ct. App. 1998) (*quoting Chitlik v. Allstate Ins. Co.*, 34 Ohio App. 2d 193, 196, 299 N.E.2d 295 (Ohio Ct. App. 1973)). In other words, it must appear that the parties to a contract intended for a third party to receive a benefit under their agreement in order for the third party to establish standing to enforce that agreement. *See Dellagnese*, at *P18 (*citing Laverick v. Children's Hosp. Med. Ctr. of Akron*, 43 Ohio App.3d 201, 204, 540 N.E.2d 305 (Ohio Ct. App. 1988)). Ohio case law addressing government contracts and third-party standing questions is illustrative.

In one case, the FAA made grants to the city of Akron for airport development and airport planning, in return for "numerous assurances that must be given by an airport authority as a condition of eligibility for federal funds." *Castle Aviation*, 1993 Ohio App. LEXIS 2993 at *3. When the city agreed to sell one of the airport terminal buildings, a tenant of the building fought the sale and its subsequent eviction. *Id.* The tenant claimed status as a third-party beneficiary to enforce certain language in the agreement that allegedly prohibited the city from selling the terminal building without prior approval from the Secretary of Transportation. *Id.* at *4. The court ruled that nothing in the grant agreement showed that the agreement was intended to benefit the tenant, and therefore the tenant lacked standing to enforce the terms of the contract. *Id.* at *5.

In another case, the cities of Akron and Fairlawn and the township of Bath entered into a Joint Economic Development District (the "BAF JEDD"), an agreement between the parties the purposes of which included "assur[ing] the continued economic viability of Bath Township" and "improv[ing] the economic welfare of the people in the region." *Dellagnese*,

2006 Ohio 6904 at *P3.  A businessman and resident of Bath Township sued the BAF JEDD and the parties to the agreement, alleging that the actions taken pursuant to the BAF JEDD had furthered Akron's interests, but hindered the economic development of Bath and the BAF JEDD district.  *Id.* at *P4.  The plaintiff also claimed to have suffered personal economic damages.  *Id.*  He brought several claims, including a breach of contract count, and argued that he had standing both as a taxpayer and as a third-party beneficiary to the BAF JEDD.  *Id.* at *P5-6.

After disposing of the plaintiff's taxpayer standing claims, the court cited language from the contract that read: "This Contract shall inure to the benefit of and shall be binding upon the District, Bath Township, Akron, Fairlawn, and their respective permitted successors. . . . <u>This Contract shall not inure to the benefit of anyone other than as provided in the immediately preceding sentence</u>."  *Id.* at *P19 (emphasis included).  Thus, the court concluded, there was no evidence that the parties to the BAF JEDD clearly intended that the plaintiff or any other member of the public have authority to enforce the agreement.  *Id.*  The court also noted that the plaintiff was not without a means to voice his concerns, as he could seek redress regarding the BAF JEDD at Bath Township Trustees meetings, and, if still dissatisfied, he could "seek alternate representation in the next election."  *Id.* at *P21.

In a third analogous case, the Village of Moscow, Ohio entered into an agreement with the federal government (the U.S. Army Corps of Engineers) in 1976 regarding a land erosion project.  *Kappes*, 1998 Ohio App. LEXIS 2012 at *1.  Private landowners adversely affected by the results of the project filed suit against the village twenty years later.  *Id.* at *2.  Among the counts was one that the village had breached a promise to maintain and repair the project.  *Id.* at *2-3.  The plaintiffs argued that they were intended beneficiaries of the agreement

between the village and the federal government, and therefore had standing as third-party beneficiaries to enforce the contract. *Id.* at *4-6. After reviewing the pertinent facts and language of the agreement, the court explained that the purpose of the project was "primarily research and demonstration and not to benefit or protect individual private property owners." *Id.* at 6. Therefore, the court concluded, the plaintiffs could not show that they were intended beneficiaries of the agreement. *Id.* at 8. Consequently they had no standing to sue the village. *Id.*

### C.  Plaintiffs Cannot Meet Their Burden

To demonstrate standing as a third-party beneficiary to the government contract here, Plaintiffs must show a clear manifestation in the Agreement that DOJ and the City made and entered into the Agreement with the intent to directly benefit Plaintiffs, and with the intention that such third-party beneficiaries could enforce the Agreement on their own behalf. Plaintiffs are unable to meet this burden.

#### 1.  The Agreement does not clearly manifest an intention that non-parties would directly benefit from the Agreement

Language in the Agreement reinforces the conclusion that the parties intended to confer a benefit solely upon each other, not any other third party. Specifically, the Agreement states that DOJ offered "to conclude the use of force component of DOJ's investigation of the CDP," in return for the City's promise to perform under the provisions of the contract. (*Id.* at 2.) The City also received the benefit of DOJ promising not to file suit against the City for an unlawful pattern or practice of excessive force (*id.* at 3: ¶ 12), a substantial financial benefit indeed, and one that inured directly to the City (and its coffers). Thus, DOJ benefitted by enforcing compliance with federal constitutional and statutory laws, while the City benefitted by

-11-

having the investigation closed, and by ensuring that it would not be dragged into court based on its previous practices. Any benefit flowing to the citizens of Cleveland was an incidental benefit at most. There is no mention of conferring a benefit upon a third party. The only evidence Plaintiffs can offer to show that the contracting parties intended to directly benefit third parties is a letter from DOJ dated more than three years after the effective date of the Agreement, as well as arguments unsupported by case law. Neither are sufficient to satisfy Plaintiffs' burden.

First, the DOJ letter dated June 29, 2007 (which responded to a letter from Plaintiffs' counsel sent after this case was filed) states that DOJ concluded its use of force investigation in return for the City's compliance with the terms of the Agreement. (ECF No. 15-4, Pl.'s Opp. Br, Ex. 3.) The letter goes on to state that the "investigation of the CDP, and the resolution of that investigation, inures generally to the benefit of the citizens of the City of Cleveland, and to the benefit of the citizens who interact with the CDP." (*Id.*) Plaintiffs argue that this statement is enough to satisfy their burden. In fact, the letter supports the opposite conclusion – that the Agreement was not intended to expressly benefit Plaintiffs or any other private party, but rather conferred a general benefit upon anyone who lives or works in the city of Cleveland.[2]

Second, Plaintiffs argue that citizens are necessarily the intended beneficiaries of any agreements entered into by government entities such as DOJ and the City, because governments "exist because of, by virtue of, and *for* the citizens," and thus any duty owed under

---

[2]The letter also claims that "as paragraph 14 of the agreement makes clear, the agreement is not intended to create a cause of action for third parties." DOJ, however, misinterprets or misstates the meaning of paragraph 14. Paragraph 14 explicitly contemplates suits for unlawful retaliation, premised solely on the Agreement, if CDP fired a person because that person filed a complaint or cooperated in the investigation. The language cited in DOJ's letter merely indicates that the Agreement did not create a cause of action for retaliation, nothing more.

such agreements must be for the benefit of the citizens. (ECF No. 15, Pl. Opp. Br. at 4 (emphasis in original).) Furthermore, Plaintiffs contend, they are intended third-party beneficiaries because they are "member[s] of the class intended to benefit from the DOJ investigation and the agreement [sic]." (*Id.*)

Plaintiffs' position ignores the established case law in Ohio recited previously: "[a]s a general rule private citizens have no right to enforce government contracts on their own behalf unless a different intention is clearly manifested." *Castle Aviation*, 1993 Ohio App. LEXIS 2993 at \*5. *See also*, *Dellagnese*, 2006 Ohio 6904 at \*P19; *Kappes*, 1998 Ohio App. LEXIS 2012 at \*8-9; *Doe v. Adkins*, 110 Ohio App. 3d 427, 436, 674 N.E.2d 731, 737 (Ohio Ct. App. 1996). Courts have ruled that a tenant at an airport created and funded pursuant to a government contract is not an intended third-party beneficiary. *Castle Aviation*, 1993 Ohio App. LEXIS 2993 at \*5. Private landowners who owned property on the banks of the Ohio River were not intended third-party beneficiaries to an agreement contemplating research and testing of erosion caused by the same river. *Kappes*, 1998 Ohio App. LEXIS 2012 at \*6. A businessman whose business suffered in the aftermath of an economic agreement between governments was not an intended third-party beneficiary to that agreement. *Dellagnese*, 2006 Ohio 6904 at \*P18-20. Similarly, Plaintiffs, as citizens of Cleveland, and even citizens who come into contact with the CDP, are not intended third-party beneficiaries of the Agreement.

### 2. The Agreement does not clearly manifest an intention that non-parties would have standing to enforce the Agreement

Language in the Agreement also reinforces the conclusion that the parties intended that only DOJ would enforce the contract. First, the Agreement by its explicit terms grants to <u>DOJ</u> the right to enforce the contract against the City. (ECF No. 1-3, Compl., Feb. 9,

-13-

2004 Agreement at 3: ¶ 11.)  Second, the Agreement's language does not manifest the intention for non-parties to have standing to enforce the contract, but quite the opposite.  Examples include the following: Paragraph 8, which provides that "[t]his Agreement shall terminate one year after the effective date of the Agreement, provided that at that time the DOJ has not filed suit to enforce any of the provisions of this Agreement." (emphasis added); Paragraph 6, providing that DOJ "shall retain any non-public information in a confidential manner and shall not disclose any non-public information to any person or entity, other than a party, [without consent from the City].  This Agreement does not authorize, nor shall it be construed to authorize, access to any CDP documents by persons or entities other than DOJ or the City." (emphasis added); and Paragraph 12, which memorializes that the City promised to "address the use of deadly force by CDP officers," in return for a benefit in the form of DOJ agreeing "to forego filing any claim accrued to date under [42 U.S.C. § 14141] alleging a pattern or practice of excessive force."[3]  Clearly the Agreement only contemplated that DOJ – for a period of one year after the date of execution – could enforce the contract.

### D.  Plaintiffs Do Not Have Standing As Intended Third-Party Beneficiaries

The Agreement was intended to benefit DOJ and the City, and the parties contemplated only that DOJ would enforce the terms of the contract.  Plaintiffs cannot show a

---

[3]The Court notes that Paragraph 10 might be construed as evidence that the contracting parties intended to confer a benefit on some third party.  Paragraph 10 provides that "[t]he parties agree to defend the provisions of this Agreement.  The parties shall notify each other of any court or administrative challenge to this Agreement."  Plaintiffs do not make this argument, however, and the other provisions in the Agreement, along with the circumstances of the Agreement, lead the Court to conclude otherwise.  Paragraph 10, at most, contemplates that some third party might file suit attempting to enforce the Agreement during the period when the Agreement was in effect.  The language of the provision clearly manifests only the intention that the City and DOJ would join forces to beat back such an attempt (presumably by motion to dismiss for lack of standing, as in the instant case), not that a third party would have standing to successfully enforce the Agreement as an intended third-party beneficiary.

clearly manifested intent otherwise. Accordingly, Plaintiffs are not intended third-party beneficiaries to the Agreement, and they have no standing to enforce the Agreement by way of the instant lawsuit.

The Court's decision does not mean, however, that Plaintiffs are left without a remedy for their justifiable concerns. As the *Dellagnese* court noted, citizens can raise such concerns directly to the local government officials – whether formally at City Council meetings, or otherwise – and, if they are still dissatisfied thereafter, they can seek alternate representation in the next election. Furthermore, as the June 29, 2007 letter from DOJ explains, Plaintiffs (or others similarly situated) can seek DOJ intervention by providing information to federal authorities supporting allegations of current and ongoing patterns or practices in violation of federal law. And of course, any person who feels that he or she was the specific victim of the unconstitutional use of force, deadly or otherwise, may file a federal lawsuit against the officers pursuant to 42 U.S.C. § 1983.

### E. NAACP's Standing Claims Similarly Fail

The reasoning and analysis provided above also lead the Court to conclude that NAACP lacks standing in the instant case. If the NAACP's claims are derivative of Plaintiffs' claims, NAACP has no standing if Plaintiffs have no standing. Moreover, NAACP lacks standing on its own; it is still a third party, not a signatory to the Agreement, and thus subject to the same facts and findings that are fatal to Plaintiffs' claims.

### IV. CONCLUSION

For the reasons given above, Plaintiffs cannot establish standing as intended third-party beneficiaries, and would-be Intervenor NAACP cannot establish standing either.

Accordingly, would-be Intervenor NAACP's Motion to Intervene **(ECF No. 8)** is **DENIED**, and Defendant City of Cleveland's Motion to Dismiss **(ECF No. 3)** must be, and is, **GRANTED**. The above-captioned case is **DISMISSED WITH PREJUDICE**.

      **IT IS SO ORDERED.**

      */s/ Dan Aaron Polster    August 24, 2007*
      **Dan Aaron Polster**
      **United States District Judge**